**Jaime Agustin AGCAOILI, et al.,
Plaintiffs–Appellants,**

v.

**Ernest E. GUSTAFSON, et al.,
Defendants–Appellees.**

No. 86–5830.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1987.

Decided April 4, 1988.

Reargued on Grant of Petition
for Rehearing Dec. 13, 1988.

Decided March 9, 1989.

Russell Marshak and Brian E. Schield, Popkin, Shamir & Golan, Los Angeles, Cal., for plaintiffs-appellants.

Marshall Tamor Golding, Atty., Civil Div., Dept. of Justice, Washington, D.C., for defendants-appellees.

Before BROWNING, FLETCHER and POOLE, Circuit Judges.

PER CURIAM:

After the decision by the Supreme Court in *INS v. Pangilinan*, — U.S. —, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988), we granted rehearing. In light of the Supreme Court's decision, we withdraw our previous opinion and deny the appellant's petition for mandamus.

Appellants, Filipinos who served in the United States Armed Forces during World

War II, brought this mandamus action to compel the Immigration and Naturalization Service (INS) to process their applications for naturalization, to schedule them for preliminary examinations, to conduct investigations, to make recommendations to the district court concerning their eligibility for naturalization, and to schedule them for final hearings before the district court, in accordance with the Immigration and Nationality Act (INA). The district court denied both parties' motions for summary judgment and stayed the action pending a final decision by the Supreme Court in *Pangilinan v. INS*, 796 F.2d 1091 (9th Cir. 1986), *rev'd*, —— U.S. ——, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988). The applicants appealed.

## FACTS

The appellants are 63 Filipinos who served in the United States Armed Forces during World War II. Most of the appellants reside in the Philippines. They have applied for naturalization under sections 701 and 702 of the Nationality Act of 1940, Pub.L. No. 76–853, 54 Stat. 1137, *as amended by* the Second War Powers Act of 1942, section 1001, Pub.L. No. 77–507, 56 Stat. 182. Sections 701 and 702 exempted non-citizens who served in the United States Armed Forces from many customary naturalization requirements. By its own terms, the Second War Powers Act expired on December 31, 1946. From October 1945 to August 1946, no official with authority under these sections was present in the Philippines to receive or act upon naturalization petitions.

This action arose out of the INS's refusal to accept the applicants' Form N–400 applications. Before filing this suit, the applicants tried but failed to resolve the dispute directly with the INS. They then petitioned *ex parte* the Clerk of the Court for the United States District Court, Central District of California, to file naturalization petitions directly with that court. Chief Judge Real issued an order permitting the filings. The INS, however, refused to schedule the appellants for preliminary examination and refused to make recommendations to the court concerning the petitioners' eligibility. The INS moved to vacate the district court's order, on the ground that the district court lacked jurisdiction to entertain petitions for naturalization filed by foreign address applicants. That motion was denied. The INS filed a Notice of Appeal and requested a stay pending appeal. The district court denied the request for a stay. A different district court judge denied cross motions for summary judgment in this proceeding. The INS dropped its appeal of Judge Real's order six weeks later.

After denying summary judgment, the district court granted the INS's motion to stay the proceedings pending the Supreme Court's decision in *Pangilinan*. The applicants appealed, and a motions panel of this court properly held that we have jurisdiction under 28 U.S.C. § 1292(a)(1).

We initially determined that some of the claims before the district court were not likely to be decided in *Pangilinan*, and therefore exercised our jurisdiction over the appeal. *Agcaoili v. Gustafson*, 844 F.2d 620, 623–24 (9th Cir.1988). We held that the district court abused its discretion in staying the action, and directed the district court to grant mandamus relief to the applicants. *Id.* at 625, 628.

## DISCUSSION

The Supreme Court's decision in *Pangilinan* forecloses appellants' claims. The Court laid down broad principles which preclude any of the appellants from being naturalized now under the expired provisions:

> [F]undamentally, ... the power to make someone a citizen of the United States has not been conferred upon the federal courts ... as one of their generally applicable equitable powers.... Rather, it has been given them as a specific function to be performed in strict compliance with the terms of an authorizing statute which say that "[a] person may be naturalized ... in the manner and under the conditions prescribed in this subchapter, *and not otherwise.*" 8 U.S.C. § 1421(d) (emphasis added).

*Pangilinan*, 108 S.Ct. at 2216. The Court noted that Congress amended the immigration laws in 1961 by adding § 310(e), 8 U.S.C. § 1421(e). Section 310(e) specifies

that all petitions subsequently filed are to be judged under the requirements of the 1952 Act, which no longer extended citizenship to Filipino servicemen under special terms. *Id.* "Neither by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of these limitations." *Id.*

Because courts are powerless to naturalize appellants under the expired provisions, no purpose would be served by compelling the INS to process naturalization applications brought under those provisions. Our original decision was premised on the assumption that some of the applicants could qualify for Category I status,[1] and therefore be eligible for naturalization whatever the ultimate holding in *Pangilinan*, which dealt only with Category II applicants. However, the language of *Pangilinan* sweeps more broadly: the Court's ban on naturalization under the repealed provisions would apply to Category I as well as Category II applicants.

The appellants' claims under the due process and equal protection clauses of the fifth amendment are also disposed of by *Pangilinan*. The Court specifically held that the absence of a naturalization officer in the Philippines during much of the effective period for naturalizations under sections 701 and 702 did not violate due process. *Pangilinan*, 108 S.Ct. at 2216–17. An equal protection challenge was also rejected, on the grounds that potential Filipino applicants had access to a naturalization officer for a greater period of time than many veterans in other parts of the world, and that the absence of a naturalization officer was not motivated by any racial animus. *Id.* at 2217.[2]

Finally, the appellants argue that two changes in INS policy affecting Category I

applicants, one made before and one after *Pangilinan*, were not promulgated in conformity with the requirements of the Administrative Procedure Act, 5 U.S.C. §§ 551(4), 552, 553(b) and (c). In light of the Supreme Court's holding in *Pangilinan*, we need not reach these issues.

## CONCLUSION

The petition for rehearing is granted. The district court's denial of appellants' petition for mandamus is *AFFIRMED*. Relief for these applicants is, unfortunately, beyond the power of this court. Any remedy for the patent injustice visited upon these veterans must be left solely to the will and conscience of Congress.

The opinion at 844 F.2d 620 is WITHDRAWN.

---

**1.** As we described in our previous opinion, 844 F.2d at 622, even after the expiration date of the Second War Powers Act certain Filipino veterans have been found to be entitled to naturalization under its provisions. A categorization was created in *In re Naturalization of 68 Filipino War Veterans*, 406 F.Supp. 931 (N.D.Cal.1975), based on whether the applicant took affirmative steps to be naturalized before the December 31, 1946 statutory cut-off date. Until very recently, the INS had a policy not to oppose the naturalization of Category I veterans.

**2.** The United States Government's revocation of Vice Consul Ennis's naturalization authority was in response to the concerns of Philippine officials over potential mass migration which would drain their country of necessary manpower. *Pangilinan*, 108 S.Ct. at 2213, 2217.