**Severino ABELA, et al.,
Petitioners–Appellees,**

**v.**

**Ernest GUSTAFSON, et al.,
Respondents–Appellants.**

**No. 87–5658.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 27, 1989.

Decided Nov. 6, 1989.

Michael C. Johnson, Sp. Asst. U.S. Atty., Los Angeles, Cal., for respondents-appellants.

Philip D. Abramowitz, Korenberg, Deutsch & Abramowitz, Encino, Cal., for petitioners-appellees.

Before NELSON and BOOCHEVER, Circuit Judges, and BROWNING,* District Judge.

* Honorable William D. Browning, United States District Judge, for the District of Arizona, sitting by designation.

NELSON, Circuit Judge:

This appeal concerns the right of petitioners for naturalization to receive attorney fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, when the government actively opposes the petition. We hold that the EAJA applies to contested petitioners for naturalization.

Appellees are sixty-nine petitioners for naturalization, the majority of whom are Filipino veterans of World War II who sought American citizenship based upon long-expired provisions of the Nationality Act of 1940, Pub.L. No. 76–853, 54 Stat. 1137, *as amended by* the second War Powers Act of 1942, section 1001, Pub.L. No. 77–507, 56 Stat. 182. These provisions, sections 701 and 702, exempted noncitizens who served in the United States Armed Forces from many of the customary naturalization requirements. The second War Powers Act expired on December 31, 1946. From October 1945 to August 1946, no official with authority under these sections was present in the Philippines to receive or act upon naturalization petitions. Appellees sought naturalization on the ground that they had had a statutory right to naturalization and had made reasonable efforts to be naturalized before the Act expired. The remaining petitioners sought naturalization as lawful permanent residents who had waited the required statutory period. One petitioner sought naturalization based upon military service during the Korean war.

Each petitioner for naturalization filed an application for naturalization with the Immigration & Naturalization Service ("INS") and was interviewed by an immigration examiner. At the time of the interview each petitioner filed a formal petition for naturalization with the district court. The INS is required by federal regulation to process petitions for naturalization and schedule final hearings. 8 C.F.R. §§ 335.-12, 336.13. The INS took no action on the pending petitions of many of the petition-

ers for several years, despite requests by petitioners and their counsel. Petitioners moved the district court to schedule their pending petitions for naturalization for final hearing and determination, arguing that the court should hear their petitions before the Attorney General "completed" his investigation because the INS was delaying unnecessarily.

The INS contested appellees' motion to calendar the petitions for final hearing in part on the ground that the INS's delay was justified. The INS asserted that it was awaiting submission of requested evidence by petitioners, the occurrence of second interviews, and the transcription of second interviews that already had taken place. The INS also stated that four petitioners had "been notified that they are ineligible for naturalization as a Category I Filipino War Veterans [sic] based on the evidence presented and were notified that they fall within Category II."

The District Court granted the appellees' motion to calendar and ordered the INS to appear at a final hearing with its recommendation on each petition for naturalization. At the final hearings, the INS recommended that eighteen of the sixty-nine cases be granted. It either recommended continuance for further testimony and the submission of further evidence on or contested the eligibility of the remaining petitions. The INS contested the eligibility of the Filipino veterans seeking naturalization pursuant to sections 701 and 702 of the Nationality Act of 1940 only on the ground that petitioners had provided inadequate evidence of their military service and "Category I" status; the INS did not argue, as the Supreme Court later held in *Immigration & Naturalization Serv. v. Pangilinan*, 486 U.S. 875, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988), that the expired provisions of the Act could not be the basis for naturalization of anyone, regardless whether they were Category I or Category II. The appellees at the final hearing submitted proof of qualifying military service in the form of documents, photographs, medals, and testimony, and argued that they were eligible to be naturalized as Cat-

egory I veterans. The district court granted most of the petitions for naturalization.

Of the petitioners whose petitions were granted over INS objection, all but one were applicants for naturalization under sections 701 and 702 of the Nationality Act of 1940.

On July 16, 1985, petitioners' counsel filed with the district court a motion for attorney fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). Petitioners argued that counsel was entitled to fees billed at $125 per hour because of the expertise required to bring the case and the complexity of the area of law involved. The district court granted the motion.

## STANDARD OF REVIEW

■ We review for abuse of discretion the district court's determination that attorney fees under the Equal Access to Justice Act were appropriate because the government's position was not substantially justified. *Pierce v. Underwood,* —— U.S. ——, 108 S.Ct. 2541, 2546–49, 101 L.Ed.2d 490 (1988). We also review for abuse of discretion the issue whether the amount of the attorney's fees award was proper. *Id.* 108 S.Ct. at 2553.

## DISCUSSION

I. *Application of the EAJA to Naturalization Proceedings*

The EAJA requires a court to award attorney fees

to a prevailing party other than the United States ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Appellants contend that the EAJA does not apply to naturalization proceedings because the government's role in such proceedings is neither

litigative nor administrative. Appellants reason that appellees therefore cannot be "prevailing parties" within the meaning of the EAJA. Appellants' claim, in essence, is that the EAJA does not apply to naturalization proceedings because petitions for naturalization are not actions brought "against" the United States, but rather are brought *ex parte.*

 This is a case of first impression. The language of the statute and congressional intent mandate our decision that the EAJA applies to fees incurred in contested proceedings for naturalization.

 Naturalization proceedings are "civil actions" and, when contested, are adversarial. *Tutun v. United States,* 270 U.S. 568, 577–578, 46 S.Ct. 425, 426–427, 70 L.Ed. 738 (1927); C. Gordon & S. Mailman, *Immigration Law and Procedure* § 14.4a (1988). The Supreme Court, in deciding that a naturalization proceeding is a "case or controversy" over which federal courts have jurisdiction pursuant to the Judicial Code and Article III § 2 of the United States Constitution, relied on the fact that such proceedings bear the hallmarks of adversarial adjudications.

> The [petitioner's] claim is presented to the court in such a form that the judicial power is capable of acting upon it.... *The United States is always a possible adverse party.* By § 11 of the Naturalization Act the full rights of a litigant are expressly reserved to it.... Its contentions are submitted to the court for adjudication.

*Tutun,* 270 U.S. at 577, 46 S.Ct. at 427 (emphasis added). An authoritative treatise on immigration law and procedure explains the *Tutun* holding and its progeny:

> In an early expression the Supreme Court suggested that while in a certain sense a naturalization case was judicial, it was *not an adversary proceeding. However, this concept was rejected* in later Supreme Court decisions, and it is now undisputed that a naturalization case is a judicial proceeding. [citing *Tutun* and its progeny]....
>
> Consequently it can be stated that, while there is extensive administrative

participation, an application for naturalization is in every respect a judicial proceeding and encompasses every incident of such proceedings.

C. Gordon & S. Mailman, *supra* § 14.4a (emphasis added). Congress has conferred upon the United States the full statutory rights of a litigant. 8 U.S.C. § 1447(c); C. Gordon & S. Mailman, *supra* § 16.7e. The Attorney General has the right to appear before any court in any naturalization proceeding, may cross-examine the petitioner and witnesses, produce evidence, and be heard in opposition to the granting of any petition. 8 U.S.C. § 1447(c). Because contested naturalization proceedings have all the features of adversarial adjudications and the United States acts as an "adverse party," *Tutun,* 270 U.S. at 577, 46 S.Ct. at 427, a petitioner who is awarded naturalization in such a proceeding is a "prevailing party."

 Congress's expressed intent in enacting the EAJA supports this conclusion. Congress enacted the EAJA to ensure that individuals and organizations would not be deterred by the expense of unjustified governmental opposition from vindicating their fundamental rights in civil actions and in administrative proceedings. EAJA, Pub.L. No. 96–481, § 202(a), 94 Stat. 2327 (1980); Pub.L. No. 99–80, 99 Stat. 183 (1985); 1985 U.S.Code Cong. & Admin.News 132. Justice Brennan explained the EAJA's purpose in the Supreme Court's first case involving the Act:

> Concerned that the government, with its vast resources, could force citizens into acquiescing to adverse Government action, rather than vindicating their rights, simply by threatening them with costly litigation, Congress enacted the EAJA, waiving the United States' sovereign and general statutory immunity to fee awards and creating a limited exception to the "American Rule" against awarding attorneys fees to prevailing parties.... Consequently, when a qualified party ... *prevails against the United States in an adversarial proceeding* not sounding in tort, the EAJA prescribes that: "a court shall award ... fees and

other expenses ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

*Pierce v. Underwood*, —— U.S. ——, 108 S.Ct. 2541, 2555, 101 L.Ed.2d 490 (1988) (Brennan, J., dissenting) (emphasis added). The government possesses the same power in a naturalization proceeding as in any other civil action, through advocacy, examination of witnesses, and presentation of evidence, to oppose the petitioners in their quest to vindicate their rights. Unjustified government opposition to naturalization petitions, when the petitioners know the government can avail itself of its full rights as a litigant to the proceeding, has the deterrent effect on petitioners that Congress sought to diminish.

Analogy to sections of the EAJA dealing with costs and fees for adversarial agency adjudications is appropriate. *See* 1985 U.S. Code Cong. & Admin.News 145 (House Report No. 120) (section-by-section analysis) ("section 2 of the bill contains many subsections which are analogous to those contained in section 1; section 1 relates to administrative proceedings, while section 2 relates to court proceedings."). Congress defined an "adversary adjudication," for which it requires the government to pay attorney fees unless the government's position is substantially justified, as "an adjudication under section 554 of this title *in which the position of the United States is represented by counsel or otherwise.*" 5 U.S.C. § 504(b)(1)(C) (emphasis added). This demonstrates that Congress believed that the presence of counsel for the government makes a hearing sufficiently adversarial to have the deterrent effect on potential litigants that Congress sought in the EAJA to minimize. This circuit recently examined the legislative history of the EAJA with respect to the definition of "adversary adjudications" and determined that Congress intended that the provision be read broadly. *Escobar Ruiz v. INS*, 813 F.2d 283, 290–91 (9th Cir.1987) (holding that the EAJA applies to deportation proceedings), *aff'd on rehearing en banc*, 838 F.2d 1020 (9th Cir.1988). Our reasoning in

that case applies here. We cited, among other indicia of the drafters' intent, the House Report on the bill, which explained that Congress's decision to limit the coverage of section 504(a)(1) to adversary adjudications

> reflects a desire to limit the award of fees to situations where participants have a concrete interest at stake but nevertheless may be deterred from asserting or defending that interest because of the time and expense involved in pursuing administrative remedies. In these situations, in order to insure that individuals will actively seek to protect their rights vis-a-vis the government, they must have the opportunity to recover the costs of litigating.

*Id.* at 289 (quoting H. Rep. No. 1418, 96th Cong., 2d Sess., Statement, at 14, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4993). We also observed that Congress, in reauthorizing the EAJA in 1985, repeatedly chastised the courts for our restrictive interpretation of the EAJA and urged us to take the " 'expansive view' " of the Act and apply " 'the broader meaning.' " *Id.* at 290 (quoting H.R.Rep. No. 120, 99th Cong., 1st Sess., *reprinted in* 1985 U.S.Code Cong. & Admin.News 137, 147). In concluding that the EAJA applies to deportation proceedings, we used reasoning that applies with equal force to our analysis regarding naturalization proceedings.

> It would be wholly inconsistent with the purposes of the EAJA to exclude proceedings, such as immigration proceedings, *in which individuals have fundamental interests at stake that the government is attacking in a complex and adversarial hearing.* The complexity of deportation proceedings goes beyond the fact that they embody the features listed in section 554 [including a determination on the record after an opportunity for an agency hearing]. *Both sides present evidence and interrogate, examine, and cross-examine witnesses* .... The immigration judge is required to base the decision of deportability on reasonable, substantial, and probative ev-

idence.... And the proceedings involve the intricate laws of the INA, which resemble "King Minos's labyrinth in ancient Crete."

*Id.* at 292 (emphasis added) (citations omitted). Contested naturalization proceedings, like deportation proceedings, involve fundamental interests and are substantially complex and adversarial. For petitioners to secure their rights it is often necessary for them to have counsel. Congress enacted the EAJA to prevent overwhelming governmental resources and huge litigation costs from deterring individuals in precisely petitioners' situations from vindicating their rights. *Escobar Ruiz,* 838 F.2d at 1026. Therefore, we find that the EAJA applies to naturalization proceedings.

## II. *The Government's Position Was Not Substantially Justified*

28 U.S.C. § 2412(d)(1)(A) provides for the award of attorney fees to a party prevailing against the government unless the position of the United States is substantially justified. "The position of the United States" includes both the government's litigating position and "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). The court must consider the circumstances both prior to and during litigation. *Barry v. Bowen,* 825 F.2d 1324, 1330 (9th Cir. 1987). The Supreme Court recently affirmed the Ninth Circuit's holding that "substantially justified" means having a "reasonable basis both in law and fact." *Pierce v. Underwood,* 108 S.Ct. at 2550.

Appellants argue that even if the EAJA applies to naturalization proceedings, the district court abused its discretion by awarding attorney fees because the government's position was substantially justified. Appellants assert that because the Supreme Court, subsequent to the district court's decision, determined that naturalization is no longer available under the expired provisions of section 701 of the Nationality Act of 1940, *see Pangilinan,* 108 S.Ct. at 2216, the government's litigation position of contesting the petitions was substantially justified. Appellees respond that *Pangilinan* did not render ineligible

Category I veterans who attempted to file petitions for naturalization prior to the expiration of section 701, but rather applied only to Category II veterans who had not made such efforts. Appellees also argue that the government's "position" whose merit must be evaluated under the EAJA includes not only its litigation position, but also its prelitigation unexcused delays in acting on the petitions for naturalization and its refusal to settle the case. Finally, appellees contend that the INS litigating position with respect to the Category I veterans was unreasonable because the INS unjustifiably challenged the evidence of military service presented by petitioners.

■ The Ninth Circuit has held that *Pangilinan*'s language was sufficiently broad to foreclose naturalization under section 701 of the Nationality Act of 1940 to both Category I and Category II veterans. *Agcaoili v. Gustafson,* 870 F.2d 462, 464 (9th Cir.1989) (per curiam). The government asserts that its position was substantially justified because *Pangilinan* and *Agcaoili,* if they had been decided before the district court decision, would have precluded granting of naturalization. The government's argument, however, misconstrues the term "position." The government's litigation position is not merely its side of the case, whose merit may be determined according to who won or lost or who should have won or lost. *Pierce,* 108 S.Ct. at 2552 ("Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose."). Rather, the courts evaluate the basic *arguments* the government put forth to determine whether they have a "reasonable basis in law and fact." *Id.* at 2550; *accord, e.g., Barry v. Bowen,* 825 F.2d at 1331 ("examin[ing] each of the government's three arguments [in the litigation in district court] in turn" to determine whether they had a "reasonable basis in both law and fact"); *Blitz v. Donovan,* 740 F.2d 1241, 1244 (D.C.Cir.1984) ("This court has construed the 'position of the United States' to mean 'the arguments relied upon by the government in litiga-

tion'...." (citation omitted)). Therefore, *Pangilinan* and *Agcaoili* only support a finding that the government's position was "substantially justified" if the government contested the petitions for naturalization on the ground on which those cases were decided: that naturalization is not available to any petitioners under the expired provisions of the Nationality Act of 1940.

Contrary to the government's inexplicable assertions on appeal, however, it failed to contest appellees' petitions for naturalization on that ground. The government at no time argued that the courts do not have the power to naturalize Category I veterans under section 701, as the Supreme Court held in *Pangilinan.* Rather, the government assumed that naturalization was available to Category I veterans. It argued only that the evidence of many of the petitioners was insufficient to establish qualifying military service within the terms of section 701. It is this argument that the court must evaluate for a substantial foundation in fact and law. The district court found that it did not have a substantial foundation:

> A review of the proceedings indicate that petitioners were overwhelmingly successful litigants in moving to face the issue of their rights to citizenship with the Immigration and Naturalization Service (INS).
>
> INS conte[s]ted practically all these petitions [ ] with frivolous claims of lack of military service during World War II.[1] Each of the records indicate the service dates of these individual petitioners and all were in military service during the period necessary to be eligible for citizenship and made the necessary effort to perfect their rights....
>
> Forty years is too long for creating a perfect record. That was what the INS demanded. That demand was under the circumstances unreasonable.

Section 701 of the Nationality Act of 1940 states that:

the service of the petitioner in the military or naval forces of the United States shall be proved by affidavits, forming part of the petition, of at least two citizens of the United States, members or former members during the present war of the military or naval forces of the noncommissioned or warrant officer grade or higher ... or by a duly authenticated copy of the record of the executive department having custody of the record of petitioner's service, showing that the petitioner is or was during the present war a member serving honorably in such armed forces ....

Nationality Act of 1940, Pub.L. No. 76–853, 54 Stat. 1137. Congress intended this provision to be construed liberally in favor of the petitioning veteran. *See, e.g., Petition of Agustin,* 62 F.Supp. 832 (N.D.Cal.1945). Most of the appellees whose records the INS claimed it was unable to verify produced independent verification of their qualifying military service from the United States Department of the Army. Others whose records were unavailable produced affidavits of United States citizen witnesses, testimony of those witnesses, and military documents proving honorable military service. The district court did not abuse its discretion in holding that the government's position in contesting the vast majority of the sixty-nine petitions before the court was not substantially justified.

We also find that the INS's prelitigation position was not substantially justified. Appellant's argument that we need not address this issue because the district court did not cite the INS's prelitigation actions as a basis for its award of attorney fees is incorrect; this court may affirm the district court's decision on any ground that finds support in the record. *Smith v. Block,* 784 F.2d 993, 996 n. 4 (9th Cir.1986). The government's "position" whose justification we must examine is defined by statute to mean "in addition to the position

---

1. The actual text of the district court order is difficult to phrase. It reads: "INS contended practically all these petitions were with frivolous claims of lack of military service during World War II." Because the INS, not the petitioners, would have claimed that the petitioners lacked military service, we assume the court intended to state that the INS "contested" the petitions on that ground.

taken by the United States in the civil action, the action *or failure to act* by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D) (emphasis added). The Ninth Circuit has stated that "we look to the record of both the underlying government conduct at issue and the totality of circumstances present before and during litigation." *Barry v. Bowen,* 825 F.2d at 1330. We hold that the government's unexplained failure to act on naturalization petitions, which forces petitioners to obtain a court order requiring the government to calendar the petitions, is a circumstance of which the court must take cognizance in determining whether to award attorney fees. This circumstance fits within the statutory definition because it constitutes an agency's failure to act, and it precipitates litigation: if the INS acts promptly, petitioners have no need to file a motion to calendar with the court over the objection of the INS. Moreover, interpretation of the term "failure to act" to encompass unjustifiable INS delays in processing naturalization petitions is consistent with the purpose of the EAJA discussed above: to encourage individuals to vindicate their rights despite unjustifiable governmental action or inaction. Therefore, the EAJA entitles petitioners for naturalization to attorney fees incurred as a result of unjustifiable INS delays in processing the petitions, when the delays force petitioners to move the district court to order the government to calendar contested naturalization hearings.

The record in this case demonstrates that the INS unjustifiably delayed processing and calendaring many of appellees' petitions for naturalization. Many of the petitions had been pending, apparently without action, for two to seven years. The INS in some instances claimed that it had delayed processing applications because it was awaiting receipt of transcripts of interviews that had occurred more than three years prior. We hold that the government's prelitigation protracted delays and failure to act on appellees' petitions, which forced appellees to file a motion with the court to cause the government to calendar naturalization hearings, were unjustified and the EAJA therefore required the district court to award attorney fees to petitioners.

### III. *Special Circumstances*

■ Appellants argue that the district court abused its discretion by awarding attorney fees because "special circumstances" precluded the award. The "special circumstances" exception to the mandatory award of attorney fees when the government's position was not substantially justified was developed to ensure that the government is not deterred from advancing good faith but novel legal arguments and to protect the court's discretion to rely on equitable factors in denying a fee award. *See* H.R.Rep. No. 96–1418 at 11, *reprinted in* 1980 U.S.Code Cong. & Admin.News at 4953, 4990; *accord Trahan v. Regan,* 824 F.2d 96, 104 (D.C.Cir.1987), *vacated en banc on other grounds,* 866 F.2d 1424 (1988). The government advanced no novel legal arguments below, and no equitable considerations preclude an award of attorney fees to appellees. Appellants assert that it is unjust to award attorney fees to parties whose grants of naturalization would have been overturned had appellants timely appealed. We reject this argument. The possibility of naturalization under section 701 of the Nationality Act of 1940 had not been foreclosed at the time the district court rendered its decision; indeed, the appellants did not even argue to the district court that it should be. Because appellants did not raise the issue in the district court proceeding and failed timely to appeal, they should not be able to protect themselves from what would otherwise be a mandatory fee award to appellees by now attacking a final court decision, brandishing the *Pangilinan* case and claiming that appellees should not have prevailed.

### IV. *Amount of the Fee Award*

■ Appellants argue that even if a grant of attorney fees to appellees was proper, the district court abused its discretion in the amount of the award. The award shall stand because appellants failed to raise this objection before the district

court. *See, e.g., Michael–Regan Co., Inc. v. Lindell,* 527 F.2d 653, 656 (9th Cir.1975) (refusing to consider for the first time on appeal an issue not raised before the district court).

## Conclusion

The language and legislative history of the EAJA mandate application of the Act to naturalization proceedings. Appellants have failed to demonstrate that their position was substantially justified or that special circumstances existed. Therefore, the judgment is affirmed.

AFFIRMED.