**ORO VACA, INC., Plaintiff–Appellant,**

v.

Gail NORTON;[*] Jamie Rappaport Clark; Tom Fry; Helen Hankins; Clinton R. Oke; Michael Spear, Defendants–Appellees.

No. 01–17341.

D.C. No. CV–00–00313–HDM.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2002.

Decided Jan. 15, 2003.

[*] Substitution for Bruce Babbitt made pursuant to Fed.R.App.P. 43(c)(2)

Before NOONAN, BERZON and TALLMAN, Circuit Judges.

MEMORANDUM**

Oro Vaca, Inc. ("Oro Vaca") appeals the district court's denial of its motion for attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. Section 2412 ("EAJA"). The appeal comes after three years of administrative and civil actions, which culminated in dismissal by the district court of Oro Vaca's complaint as moot.

The denial of an award of attorney's fees and costs under the Equal Access to Justice Act ("EAJA") is reviewed for abuse of discretion. *Wilderness Soc'y v. Babbitt*, 5 F.3d 383, 385 (9th Cir.1993).

Oro Vaca grazes cattle in an area administered by the Bureau of Land Management ("BLM"), which issues grazing permits and promulgates rules of use under various federal statutes. The BLM derives ecological needs from Biological Opinions developed from research done by the U.S. Fish and Wildlife Service ("the Service"). In order to regulate the land in accordance with various federal regulations, the BLM has authority to issue decisions that are effective immediately unless stayed by the Interior Board of Land Appeals, referred to as "Full Force and Effect" or "FFE" decisions. See 43 C.F.R. 4.21(a)(1), 4110.3–3; 4160.3(f) (2001). Since 1996, Oro Vaca has been operating under a grazing permit issued by the BLM and effective through February 28, 2006.

Lahontan Cutthroat Trout ("trout") habitats are located throughout the area designated under Oro Vaca's grazing permit. The species' listing condition was rated as "threatened" under the Endangered Species Act ("ESA") in 1976. The BLM accordingly issued an FFE decision in 2000 that would cut short Oro Vaca's grazing season and restrict its use of the land in order to comply with the ESA. Oro Vaca disputed the decision and its underlying Biological Opinion.

After a year and a half of administrative actions initiated to settle the dispute between Oro Vaca and the BLM, the Interior Board of Land Appeals entered an order on May 30, 2000, declaring a lack of jurisdiction over the "merits of the matters decided in a Biological Opinion," concluding that Oro Vaca must pursue its claims in federal district court.

Oro Vaca filed a complaint in federal district court on June 9, 2000, against the Secretary of the Interior, the Director of the U.S. Fish and Wildlife Service and various other Department of Interior officials seeking to enjoin and set aside the BLM's 2000 FFE decision and the related 2000 Biological Opinion issued by the Service.

The district court granted Oro Vaca's motion for a temporary restraining order ("TRO") on June 13, 2000. The TRO maintained the status quo between the parties pending a June 30, 2000, hearing to determine whether to extend the TRO. At the June 30 hearing, the parties entered into a stipulation pending a preliminary injunction hearing. The stipulation allowed Oro Vaca to continue grazing its cattle on a portion of the land until July 10, 2000; a second stipulation extended that date to November 20, 2000, the date set for the preliminary injunction hearing.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

The stipulations were primarily concerned with proposed fencing that would prevent the cattle from entering the portion of the land inhabited by the trout.

In October 2000, the BLM represented in a declaration that it would not enforce the 2000 FFE during the ten days between the preliminary injunction hearing, scheduled for November 20, and the end of Oro Vaca's grazing season, November 30. The court then denied Oro Vaca's application for preliminary injunction without prejudice, finding that non-enforcement abated Oro Vaca's injury, with leave to refile should the dispute remain unresolved by April 1, 2001, the beginning of the next grazing season. The district court also set a conference for December 15, 2000, to determine the status of any potential settlement between the parties and, if necessary, to consider the merits of the complaint.

On December 14, 2000, the Department moved to stay the litigation since the BLM planned to reinitiate consultation with the Service that would likely result in a new 2001 FFE decision which would supercede the 2000 FFE decision. Oro Vaca then moved to vacate the 2000 FFE decision and Biological Opinion. On March 6, 2001, the district court granted the Department's motion to stay the proceedings and denied Oro Vaca's motion to vacate the 2000 FFE and Biological Opinion.

In March 2001, the Service issued a new Biological Opinion and the BLM issued a 2001 FFE decision. At a hearing held in April, the district court was informed of the new decisions, and determined that they were "somewhat consistent with what we had been discussing earlier in terms of a possible resolution of the case," rendering Oro Vaca's complaint moot. The district court then dismissed Oro Vaca's complaint without prejudice with leave to file a motion for attorney's fees and costs.

On May 3, 2001, Oro Vaca filed its motion for attorney's fees and costs under the EAJA. Oro Vaca argued that the TRO and other orders issued by the district court materially altered the legal relationship between the parties by preventing enforcement of the 2000 FFE and the underlying 2000 Biological Opinion during the 2000 grazing season, allowing grazing to occur consistent with Oro Vaca's 1996 grazing permit.

The district court denied Oro Vaca's motion for attorney's fees and costs on the ground that Oro Vaca was not a prevailing party because the court did not grant "any relief that materially changed the legal relationship of the parties," citing the Supreme Court's recent decision in *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). The district court further determined that the government's position was substantially justified since both the Department's litigating position and its conduct in issuing the 2000 FFE decision had a reasonable basis in law and fact.

The district court did not abuse its discretion in denying Oro Vaca's petition for attorney's fees and costs under the EAJA. "For the court to award attorney's fees and costs pursuant to EAJA, it must be shown that (1) the plaintiff is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable." *Perez–Arellano v. Smith,* 279 F.3d 791, 793 (9th Cir.2002).

Parties are ordinarily required to bear their own litigation costs. *Buckhannon,* 532 U.S. at 602. A party is considered a "prevailing party" if there has been a "ma-

terial alteration of the legal relationship of the parties." *Id.* at 604.

The Supreme Court in *Buckhannon* concluded that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change" necessary to overcome the presumption that parties will bear their own fees. *Id.* at 605. Instead, the Court determined that a "prevailing party" is one who has been awarded relief such as an enforceable judgment on the merits or a court-ordered consent decree, which creates "a material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Buckhannon*, 532 U.S. at 604.

In *Perez–Arellano,* this court applied the Supreme Court's decision in *Buckhannon* to a petition for attorney's fees and costs under the EAJA. 279 F.3d 791. This court concluded "that a 'prevailing party' under the EAJA must be one who has gained by judgment or consent decree a 'material alteration of the legal relationship of the parties.' " *Id.* at 794 (quoting *Buckhannon*, 532 U.S. at 604).

■ The only relief actually provided by the district court was the TRO issued on June 13, 2000. This did not alter the legal relationship between the parties, and granted no relief to Oro Vaca. Rather, it merely maintained the status quo between the parties until June 30, 2000, when the grazing restrictions were set to begin. The parties then voluntarily entered into stipulations that delayed the off-date of the livestock in order to allow time for completion of fencing and other measures that would keep the livestock out of the area. The stipulations between the parties cannot, by their own terms, fulfill the merit requirement required by the Court in *Buckhannon.* See 532 U.S. at 604–06.

The July 24, 2001, stipulation expressly provided that "The parties previous stipulation . . . as carried forward in this stipulation, is made without prejudice to the respective position of the parties."

The Department's change in position from the 2000 FFE to the 2001 FFE did not make Oro Vaca a prevailing party since the change was made pursuant to the Service's 2000 Biological Opinion and applicable regulations, not by an order of the court. Therefore, the district court did not abuse its discretion when it determined that Oro Vaca was not a prevailing party.

Under the EAJA, even if a party is considered prevailing, it cannot receive fees if the district court decides that the government's position was substantially justified. See *Perez–Arellano*, 279 F.3d at 794 n. 4. The district court correctly decided that the Department satisfied its burden of proving that its position was substantially justified.

In reviewing the government's justification for pursuing the litigation, we consider both the merits of the government's litigation position and the merits of the underlying agency decision upon which the lawsuit is based. *Wilderness Soc'y*, 5 F.3d at 388 (see also *Abela v. Gustafson*, 888 F.2d 1258, 1264 (9th Cir.1989)). The underlying action must be justified to a degree that would satisfy a reasonable person, and its legal position must have a reasonable basis in both law and fact. *Pierce v. Underwood*, 487 U.S. 552, 563–64, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); See also *League of Women Voters of Cal. v. FCC*, 798 F.2d 1255, 1257 (9th Cir.1986). However, "a request for attorney's fees should not result in a second major litigation." *Buckhannon*, 532 U.S. at 609 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

The district court determined:

The fact that Defendants prevailed on every motion except for the TRO indicates that their litigation positions were substantially justified. In addition, Defendant's underlying actions that gave rise to this litigation had a reasonable basis in both law and fact. The FFE decisions were based on detailed Biological Opinions prepared by the Service, which included provisions for reinitiating consultation in light of new information.

■ The Department's litigation positions were substantially justified not just because they prevailed before the district court, but also because they were consistently based on information contained in the 2000 FFE decision. The June 30 off-date used for the TRO was contemplated in the 2000 FFE decision since it marked the beginning of the "hot season" and grazing activities in the area that could endanger the trout habitat. Both stipulations and the declaration made by the Department that ultimately resulted in non-enforcement of the 2000 FFE decision were based on plans for fencing to protect the trout habitat, and the impending conclusion of the grazing season within the area. The Department's decision to reinitiate consultation with the Service, which ultimately resulted in the 2001 FFE decision, was substantially justified because it was explicitly contemplated in the 2000 Biological Opinion and applicable regulations. The 2000 Biological Opinion incorporated the language of 50 C.F.R. Section 402.16(b) (2001), which required the BLM to reinitiate consultation if "new information reveals effects of the [agency] action that may affect listed species or critical habitat in a manner or to an extent not

previously considered" in the 2000 Biological Opinion.

Finally, the district court made sufficient findings to determine that the underlying government action was substantially justified. The district court concluded that the 2000 FFE decision was "justified to a degree that would satisfy a reasonable person" since it was "based on detailed Biological Opinions prepared by the Service." Reliance on Biological Opinions is reasonable, since they play a powerful and significant role in the protection of endangered and threatened species. See, e.g., *Bennett v. Spear,* 520 U.S. 154, 169–71, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). In light of the expertise of the Service with respect to the protection of endangered and threatened species, it was reasonable for the Department to rely on the provisions of the 2000 Biological Opinion. The district court did not need to delve deeper into the data derived from the 2000 Biological Opinion, since EAJA fee decisions are not meant to create a second major litigation. *Pierce,* 487 U.S. at 563–64 (quoting *Hensley,* 461 U.S. at 437).

The district court did not abuse its discretion in deciding that the both the Department's litigation position and the underlying action in issuing the 2000 FFE decision were substantially justified.

AFFIRMED.

BERZON, Circuit Judge, concurring.

I would hold that Oro Vaca was a prevailing party. The June 30 and July 24 stipulations were entered as court orders and therefore have any necessary judicial imprimatur.[1] *See Labotest, Inc. v. Bonta,* 297 F.3d 892, 895 (9th Cir.2002). The orders provided substantial relief to Oro

---

1. Even if they had not been so entered, the stipulation would still have altered the legal relationship of the parties and would suffice for prevailing party status. *See Barrios v.* *Calif. Interscholastic Fed'n,* 277 F.3d 1128 (9th Cir.2002); *Perez–Arellano v. Smith,* 279 F.3d 791, 795 (9th Cir.2002).

Vaca, as they permitted grazing in the Little Humboldt land allotment for essentially the remainder of the 2000 grazing season. In contrast, the Bureau of Land Management(BLM)'s order permitted no grazing during that season unless certain fences were built; one of the fences was not going to be built, and the other was built incorrectly.

Under our case law, preliminary relief that does not resolve the dispute between the parties can satisfy the prevailing party test if the preliminary relief accomplishes "one of the main purposes of [the] lawsuit" and there is no judgment against that party on the merits at the conclusion of the case. *Watson v. County of Riverside,* 300 F.3d 1092, 1096 (9th Cir.2002). Here, the interim relief allowed a season of grazing that would not otherwise have been permitted (as well as requiring the BLM to relocate the incorrectly positioned fence), and, in the end, the case was dismissed without prejudice as moot because the 2001 BLM decision provided Oro Vaca with most of the relief it had sought. Under these circumstances, *Watson* requires that we recognize Oro Vaca as a prevailing party.

I concur, however, because I agree that the district court did not abuse its discretion in determining that the BLM's 2000 Full Force and Effect decision was substantially justified.