529 F.2d 537
 41 A.L.R.Fed. 597
 NAPORANO METAL AND IRON COMPANY, a corporation of the State
of New Jersey, Appellee,
v.
SECRETARY OF LABOR OF the UNITED STATES and Robert Seebol,
Reviewing Officer for Manpower Administration
District II, United States Department of Labor.
Appeal of Jonathan L. GOLDSTEIN, United States Attorney for
the District of New Jersey.
 No. 75--1373.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 13, 1975.
Decided Jan. 21, 1976.
 
 Vincent J. Agresti, Brian S. Lafferty, Newark, N.J., for appellee.
 John J. Barry, Asst. U.S. Atty., Newark, N.J., John L. Murphy, Chief, Government Regulations Section, Crim. Div., Chester J. Halicki, Dept. of Justice, Washington, D.C., for appellants.
 OPINION OF THE COURT
 Before ALDISERT, HUNTER and GARTH, Circuit Judges.
 GARTH, Circuit Judge.
 
 
 1
 This case presents for our consideration the Secretary of Labor's (Secretary) denial of labor certification to an alien. We hold that the wage established under a negotiated collective bargaining agreement and paid to alien and non-alien workers alike cannot be deemed to 'adversely affect the wages and working conditions' of Americans similarly employed within the meaning of 8 U.S.C. § 1182(a)(14). We thus conclude that the Secretary[1] acted contrary to law in denying certification and affirm the district court's issuance of a writ of mandamus.
 
 I.
 
 2
 Plaintiff-appellee Naporano Metal and Iron Co. (Naporano), a corporation located in Newark, New Jersey, applied for labor certification pursuant to 8 U.S.C. § 1182(a)(14)[2] on behalf of Elisio Carvalhal da Silva (Silva), an alien lawfully within the United States. Naporano employed Silva as a welder and cutter of scrap metal at a wage established by the collective bargaining agreement negotiated between Naporano and Local 374 of the Laborers' International Union of North America.
 
 
 3
 On February 28, 1974 a Certifying Officer for Region II of the Department of Labor[3] denied Naporano's application because Silva's wage of $3.87 per hour, the union negotiated rate, was below the prevailing wage rate of $4.63 per hour for welders in the Newark, New Jersey area. Naporano appealed from this decision to the Assistant Regional Director for Manpower for Region II of the Department of Labor.[4] On July 9, 1974, the Assistant Regional Director's designated representative[5] affirmed the denial of labor certification because Silva's wage (then $4.12 per hour as a result of a $.25 per hour increase under the union contract) was below the prevailing wage rate for that occupation in the area. This constituted a final administrative determination of Naporano's application. 29 CFR § 60.4(c).
 
 
 4
 Naporano thereafter commenced this action in the United States District Court for the District of New Jersey under 28 U.S.C. § 1361,[6] seeking a declaration that the Secretary of Labor's action was unlawful and for relief in the form of a mandatory injunction. The district court, concluding that the Secretary of Labor acted arbitrarily and that he abused his discretion in denying labor certification to Silva, granted Naporano's motion for summary judgment and issued a writ of mandamus ordering the Secretary to certify Silva under 8 U.S.C. § 1182(a)(14). The Secretary timely appealed from the district court's order. Pursuant to agreement of the parties, the district court ordered the writ of mandamus stayed pending appeal. Our jurisdiction is predicated on 28 U.S.C. § 1291.
 
 II.
 
 5
 The Administrative Procedure Act, 5 U.S.C. § 701 et seq., provides that an aggrieved person may seek judicial review[7] of the Secretary's denial of labor certification under 8 U.S.C. § 1182(a)(14). Yong v. Regional Manpower Administrator, 509 F.2d 243, 245 (9th Cir. 1975); Ratrayake v. Mack, 499 F.2d 1207, 1209--1210 (8th Cir. 1974); Reddy Inc. v. United States Department of Labor, 492 F.2d 538, 543--44 (5th Cir. 1974); Secretary of Labor v. Farino, 490 F.2d 885, 888 (7th Cir. 1973). Naporano is an 'aggrieved' party within the meaning of 5 U.S.C. § 702, for as a result of the Secretary's denial of certification, Naporano has but two options available: either it can increase Silva's wage in order to secure labor certification or it must forego Silva's needed services. In either case Naporano is 'adversely affected or aggrieved' by the Secretary's action and therefore has standing under the Administrative Procedure Act.[8] Yong v. Regional Manpower Administrator, supra at 245; Pesikoff v. Secretary of Labor, 163 U.S.App.D.C. 197, 501 F.2d 757, 760 (D.C.Cir.), cert. denied, 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974); Secretary of Labor v. Farino, supra at 889.
 
 
 6
 Under the Administrative Procedure Act, a federal court may
 
 
 7
 (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
 
 
 8
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . ..
 
 
 9
 Tested by this standard the district court concluded that the Secretary's denial of certification constituted an abuse of discretion.
 
 III.
 
 10
 The certification of aliens for employment in the United States is governed by the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. Under 8 U.S.C. § 1182(a)(14), an alien may not perform skilled or unskilled labor,
 
 
 11
 unless the Secretary of Labor has determined and certified . . . that . . . (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. (Emphasis added.)
 
 
 12
 However, this statute provides no definition or guide for ascertaining whether the wages paid to an alien will 'adversely affect' the wages and working conditions of American workers similarly employed. The Secretary must therefore exercise discretion in interpreting and implementing the statutory mandate.
 
 
 13
 In exercising this discretion the Secretary has promulgated regulations which define when a wage will 'adversely affect' American workers. These regulations provide that the employment of aliens 'will be deemed to adversely affect 'wages' or 'working conditions" unless it appears '(t)hat such employment will be for wage rates no less than those prevailing for U.S. workers similarly employed in the area of employment.' 28 CFR § 60.6(a) (1975). In turn the 'prevailing wage' rate is defined as
 
 
 14
 (1) The rate of wages paid in the area in which the work is to be performed, to the majority of those employed in that classification in construction in the area similar to the proposed undertaking;
 
 
 15
 (2) In the event that there is not a majority paid at the same rate, then the rate paid to the greater number: PROVIDED, Such greater number constitutes 30 percent of those employed; or
 
 
 16
 (3) In the event that less than 30 percent of those so employed receive the same rate, then the average rate.
 
 
 17
 29 CFR § 1.2 (1975).[9] Thus, under the Secretary's interpretation, an alien must receive at least the 'prevailing wage' rate in order to be certified under 8 U.S.C. § 1182(a)(14).
 
 
 18
 Here, the Secretary, citing data which indicated that the wages paid to welders in the Northern New Jersey and Metropolitan New York area ranged from $3.75 to $5.39 per hour, determined that the prevailing wage for Silva's position was $4.56 per hour.[10] Since Naporano, under its collective bargaining agreement, paid Silva $3.87 per hour (subsequently increased to $4.12 per hour), which was less than the 'prevailing wage', the Secretary's regulations required a finding that employment of Silva would 'adversely affect the wages and working conditions of the workers in the United States similarly employed.' 8 U.S.C. § 1182(a)(14). The Secretary's regulations compelled this result despite the fact that Naporano was paying Silva the precise wage paid to its non-alien employees under the union negotiated collective bargaining agreement. Although Naporano urged this argument in seeking certification for Silva, the Secretary rejected it outright, stating:
 
 
 19
 . . . wage rates referred to in a collective bargaining agreement are minimum rates, and while a negotiated wage with a union may coincide with the prevailing rate for an occupation such wage rate does not automatically establish the prevailing rate for purposes of alien employment.[11]
 
 
 20
 App. 12. Consequently, Silva was denied labor certification.
 
 
 21
 We find the denial of labor certification here, based as it was on the regulations promulgated by the Secretary, not in accordance with law. The controlling statute, 8 U.S.C. § 1182(a)(14), requires that an alien seeking to perform labor secure certification that his employment 'will not adversely affect the wages and working conditions of the workers in the United States similarly employed.' (Emphasis added.) Naporano has paid Silva the exact same wage which it pays to its American workers under the union contract. No one contends that the contract which resulted from the collective bargaining process failed to represent the union's best efforts. Nor is it suggested that the wage rate established by that contract for Naporano's employees was not the highest obtainable. Where an alien, such as Silva, is paid the negotiated union wage, he receives everything that organized labor has been able to achieve through collective bargaining. Regardless of any artificially constructed prevailing wage formula, a wage paid to an alien pursuant to a negotiated collective bargaining agreement cannot, in the absence of evidence impugning the agreement, be said to 'adversely affect' the wages and working conditions of American laborers in the area. See Ozbirman v. Regional Manpower Admin., U.S. Dept. of Labor, 335 F.Supp. 467, 471--72 (S.D.N.Y.1971).
 
 
 22
 The district court's opinion supporting the January 3, 1975 order of mandamus, held that the Secretary had 'abused his discretion.' Our analysis on the other hand leads us to conclude that when dealing with wages established by a negotiated collective bargaining agreement, the Secretary has no discretion to exercise. Rather, once having determined that the alien is subject to the agreement and receives no less than his non-alien colleagues, the Secretary is required to perform his legal duty of certification under the statute. Despite the difference in legal analysis, it is proper for us as an appellate court to affirm a correct decision of the district court. PAAC v. Rizzo, 502 F.2d 306, 308 n. 1 (3d Cir. 1974), cert. denied, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975).
 
 
 23
 Thus, we agree with the result reached in the district court, that the Secretary improperly denied Silva labor certification under 8 U.S.C. § 1182(a) (14).
 
 IV.
 
 24
 Having concluded that the Secretary acted contrary to law in denying Silva's labor certification, we next turn to the relief to be fashioned.
 
 
 25
 Naporano's complaint asserted mandamus jurisdiction under 28 U.S.C. § 1361. See n. 6 supra. Where a complaint is predicated upon the mandamus statute, it is essential that the plaintiff allege and show that the government owes him the performance of a legal duty 'so plainly prescribed as to be free from doubt.' Richardson v. United States, 465 F.2d 844, 849 (3d Cir. 1972), rev'd on other grounds, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974). Even in special instances where the performance of an act is committed to discretion and is not purely ministerial, mandamus has been held to lie. As we said in Davis v. Shultz, 453 F.2d 497, 502 (3d Cir. 1971):
 
 
 26
 . . . jurisdiction can be based on § 1361 to '. . . issue appropriate corrective orders where Federal officials are not acting within the zone of their permissible discretion but are abusing their discretion or otherwise acting contrary to law . . ..' (Emphasis added.)
 
 
 27
 It therefore appears, that where there has been an action taken by a government official contrary to law and so plainly prohibited as to be free from doubt, it may be remedied by the issuance of a writ of mandamus. See Commonwealth of Pa. v. National Ass'n. of Flood Ins., 520 F.2d 11, 25--27 (3d Cir. 1975).
 
 
 28
 Applying these principles here, it might seem that the controlling statute confers upon the Secretary discretion in the certification of aliens and, hence, mandamus would not lie. Remand to the Secretary for reconsideration and for the proper exercise of his discretion would then be necessary. See Ozbirman v. Regional Manpower Admin., supra, at 474; Commonwealth of Pa. v. National Ass'n. of Flood Ins., supra. However, at least two circumstances peculiar to this case persuade us that a remand to the Secretary would be both inappropriate and ineffectual.
 
 
 29
 First, as we have indicated earlier, we believe that the wage established by a negotiated collective bargaining agreement and paid to alien and non-alien alike, cannot 'adversely affect the wages and working conditions of the workers in the United States similarly employed' under 8 U.S.C. § 1182(a)(14). Thus, the Secretary has no remaining discretion here to deny labor certification based solely on the factor of wages.[12] This being so, the Secretary is required to exercise his legal duty as specified by statute and mandamus will issue to require the performance of that duty (certification).
 
 
 30
 Second, a remand in this case would be fruitless. The Secretary's regulations preclude a determination other than that which we have concluded to be contrary to law. Indeed counsel for the Secretary conceded at oral argument that upon remand the Secretary would again apply the 'prevailing wage' standard of 29 CFR § 60.6(a) resulting in still another denial of certification. In the absence of our enjoining the Secretary's regulations, which we decline to do since the regulations have not been attacked and we have not had the benefit of briefs and argument as to their validity, remand to the Secretary can serve no useful purpose. See n. 9, supra.
 
 
 31
 These observations buttress our conclusion that a writ of mandamus is required under the circumstances present here.[13] We conclude that 8 U.S.C. § 1182(a) (14) requires the Secretary in these circumstances, after having verified the existence of a negotiated collective bargaining agreement[14] under which the employer pays equal wages to alien and non-alien alike for identical work, to grant certification as a legal duty 'so plainly prescribed as to be free from doubt.' Richardson v. United States, supra at 849. Having failed to do so, we have no hesitation in compelling that performance by mandamus.
 
 
 32
 We will therefore affirm the district court's order of January 3, 1975 which properly granted a writ of mandamus to compel the Secretary to perform the plain duty of certifying Silva for employment.
 
 
 
 [1]
 Inasmuch as it is the Secretary who is entrusted by statute with certifying aliens under 8 U.S.C. § 1182(a)(14), we regard the actions of the Secretary's designated representative under 29 CFR § 60.4(a) and (b) (1975) as his own
 
 
 [2]
 8 U.S.C. § 1182(a)(14) provides:
 (a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
 (14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) that there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed.
 
 
 [3]
 29 CFR § 60.4(a) (1975)
 
 
 [4]
 29 CFR § 60.4(b) (1975)
 
 
 [5]
 29 CFR § 60.4(c) (1975)
 
 
 [6]
 28 U.S.C. § 1361 provides:
 The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff.
 
 
 [7]
 5 U.S.C. § 702 provides:
 A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.
 
 
 [8]
 Our holding in Intercontinental Placement Service, Inc. v. Shultz, 461 F.2d 222 (3d Cir. 1972), that an employment agency lacked standing under the Administrative Procedure Act to challenge the Secretary's promulgation of a regulation under 8 U.S.C. § 1182(a)(14) is not inconsistent with our decision here. The employment agency in Intercontinental Placement Service, unlike Naporano, did not employ an alien, but only sought to place aliens in employment with prospective employers. Under that factual circumstance, we held that the agency did not fall within the intended zone of interests to be protected and hence could not be regarded as 'adversely affected or aggrieved by the Secretary's action.' See Pesikoff v. Secretary of Labor, 501 F.2d 757, 760--61 (D.C.Cir.), cert. denied, 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974)
 
 
 [9]
 This definition of 'prevailing wage' was formulated by the Secretary for use in connection with the Davis-Bacon Act, 40 U.S.C. § 276a. That Act requires the Secretary to establish a 'prevailing wage' rate for laborers and mechanics on contracts to which the United States or the District of Columbia is a party. The Secretary has obviously borrowed this 'prevailing wage' formula from Davis-Bacon and has applied it in this labor certification context. However, the labor certification statute, 8 U.S.C. § 1182(a)(14), with which we are concerned here, establishes a substantially different standard. It does not require that aliens be paid a 'prevailing wage', but rather that their wage not 'adversely affect' the wages of American workers. Because no attack is made on the regulations as such, we pass this issue without deciding whether the Secretary's regulations are consistent with the governing statute and confine our discussion to the Secretary's action regardless of the legality of the regulations
 
 
 [10]
 Throughout the record in this case, the parties have referred to the prevailing wage as $4.63 per hour. In a letter to the Clerk of this Court, the Department of Justice indicated that $4.56 was in fact the prevailing wage as defined by 29 CFR § 1.2(a)(3). The use of $4.63, the median wage, rather than $4.56, must be considered an error on the part of the Secretary. Inasmuch as both $4.56 (the prevailing rate) and $4.63 (the median rate) exceed the rate paid to Silva ($3.87 per hour and then $4.12 per hour), there is no need for us to remand for further consideration by the Secretary in light of his error. The Secretary's regulations required denial of labor certification regardless of which figure is used. See p. 540 supra. In light of the letter from the Department of Justice, we will refer throughout this opinion to $4.56 as the 'prevailing wage.'
 
 
 [11]
 We are unable to understand the Secretary's reasoning in arriving at this conclusion, particularly since the collective bargaining agreement was not in the record. Generally, the wages established through collective bargaining are not regarded as mere minimum rates
 
 
 [12]
 Under 8 U.S.C. § 1182(a)(14), the Secretary must certify (a) that there are not sufficient workers in the United States to perform the work sought by the alien and (b) that the employment of the alien will 'not adversely affect the wages and working conditions of the workers in the United States similarly employed.' Here, certification was denied only because the union wage fell below the Secretary's 'prevailing wage' standard. Thus we assume that, except for the wage, the Secretary has found Silva eligible for certification under 8 U.S.C. § 1182(a)(14) and 29 CFR § 60.6(b)-(f)
 
 
 [13]
 We recognize that some commentators have advocated the issuance of mandatory injunctions rather than mandamus under 28 U.S.C. § 1361. K. C. Davis, Administrative Law Text § 23.06 (3d ed. 1972); Byse & Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and 'Nonstatutory' Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308 (1967). Since this question has not been briefed nor argued by the parties, we decline to consider the availability of such relief where jurisdiction is predicated upon 28 U.S.C. § 1361
 
 
 [14]
 Although we recognize the collective bargaining agreement between Naporano and Local 374 of the Laborers' International Union of North America is not of record, the Secretary has not challenged the fact of its existence or its terms relevant to this proceeding. Recognizing that a union contract had been negotiated and was in force at all relevant times, the Secretary nevertheless ignored its significance. See App. 12 and p. 541 supra