Cesar Juan **ACHAVAL–BIANCO, et al., Plaintiffs,**

v.

Ernest E. **GUSTAFSON, Jr., et al., Defendants.**

No. CV 88–5620 JGD.

United States District Court, C.D. California.

May 2, 1989.

Robert L. Reeves, Reeves, Kurrasch & Ramos, Los Angeles, Cal., for plaintiffs.

Gregg L. Cunningham, Asst. U.S. Atty., Los Angeles, Cal., for defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS

DAVIES, District Judge.

Having considered the papers filed by the parties and the oral argument heard on

April 17, 1989, the Court hereby GRANTS plaintiff's motion for an award of attorney's fees and costs.

### UNDERLYING FACTS

Plaintiffs' complaint for mandamus and injunctive relief was filed on September 19, 1988. Plaintiffs are fourteen aliens who allege that the INS has failed to process their petitions in a timely manner. The complaint seeks the following relief: adjudication of the plaintiffs' petitions; an order requiring the INS to communicate with applicants' attorneys and establish a rational, non-preferential system for tracking and adjudicating cases; and attorney's fees and costs.

The defendants' answer, denying the majority of plaintiffs' allegations and raising affirmative defenses, was filed on November 22, 1988. On January 17, 1989, plaintiffs filed a motion for summary judgment. On February 3, 1989, the parties filed a stipulated dismissal of plaintiffs Teresita de Jesus Butterfield, Carlos Jun Guinto, and Chun Yi Wang. A stipulated dismissal, based on settlement of the entire action, was filed on February 16, 1989.

### DISCUSSION

The availability of attorney's fees is governed by the Equal Access to Justice Act ("EAJA") which provides that, in an action against the United States a prevailing party, other than the United States, is entitled to recover attorney's fees "unless the court finds the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

In *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983), the Supreme Court noted that the determination of prevailing party status is essentially the same in all cases in which Congress has authorized an award of fees to a "prevailing party." Under *Hensley,* plaintiffs may be considered prevailing parties "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 433, 103 S.Ct. at 1939. This test was recently reaffirmed in *Texas State Teachers Association v. Garland Independent School District,* —— U.S. ——, ——, 109 S.Ct. 1486, 1492–93, 103 L.Ed.2d 866 (1989). In *Garland,* the Supreme Court held that "the touchstone of the prevailing party inquiry must be the alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Id.* at ——, 109 S.Ct. at 1493.

■ Under the *Hensley* and *Garland* standards it is clear that plaintiffs are prevailing parties. They have succeeded on a significant issue: the adjudication of their outstanding immigration petitions. The fact that settlement of the case resulted in no determination of the other relief sought by plaintiffs is unimportant. The plaintiffs achieved at least "some of the benefits" they sought. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. Moreover, the nature of the legal relationship between almost all of the plaintiffs and the Immigration and Naturalization Service ("INS") has changed: plaintiffs are no longer aliens with immigration applications pending, they are permanent residents with complete documentation of their status. Therefore, under the *Hensley* and *Garland* tests, plaintiffs are prevailing parties.

Defendants' claim that plaintiffs have not shown a causal connection between this litigation and the resolution of their cases is disingenuous. All of the applications had been pending with the INS for substantial periods of time. Definitive action was taken on all of the applications during the months of January through March 1989, in connection with the settlement of this case. Moreover, in the cases of plaintiffs Edita Yeo and Cynthia Salvanta, defendants have admitted that expeditious processing was undertaken because of this suit. Plaintiffs' reply brief, exhibit A. Clearly plaintiffs' complaint and motion for summary judgment filed on January 17, 1989, were the catalyst for the adjudication of their immigration petitions.

■ As to the determination of whether or not the government's position was sub-

stantially justified, the Ninth Circuit has adopted a test of reasonableness. *League of Women Voters of California v. F.C.C.*, 798 F.2d 1255, 1257 (9th Cir.1986). The government's position must have a reasonable basis in both law and fact. *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). The "position" includes the underlying action being challenged, and prelitigation and litigation conduct. *League of Women Voters*, 798 F.2d at 1257.

■ Although defendants are correct in stating that the INS did not take an identifiable position as to the plaintiffs' claims, the failure to take a position and the willingness to allow the applications to remain in limbo for long periods of time is arguably more egregious than a specific ruling by the INS, which the plaintiffs could have challenged. Although the Court is not insensitive to the difficulties inherent in adjudicating a vast number of immigration applications, defendants have provided no explanation for the lengthy delay in processing the following applications.

1) Cesar Juan Achaval–Bianco's application for a replacement of his permanent resident card was filed on March 23, 1988. On or about March 9, 1989, a duplicate application was approved by the INS. According to the declaration of Rosemary Melville, the Deputy Assistant District Director for Examinations at the Los Angeles District Office of the INS, the average processing time for this type of application is 120 days. Melville declaration, pg. 3. Defendants provide no explanation for why plaintiff's application took almost one year to process.

2) Victoria Santos Alcober applied for adjustment of status on June 27, 1986 and was interviewed on September 18, 1986. A second interview was conducted on November 3, 1986. Defendants provide no explanation for why her case was not referred to the Investigations Branch until July 13, 1988, more than one and a half years after her interview. The petition was ultimately approved on January 31, 1989.

3) Mabini Narvaez Beltran applied for adjustment of status on September 17, 1986, and was interviewed on December 7, 1986. There is no indication that any further action was taken on plaintiff's petition until almost two years later, in October of 1988. Plaintiff's application was granted on February 2, 1989.

4) Consejo A. Gubatina applied for adjustment of status on December 23, 1987. She was not interviewed until almost eight months later, a delay substantially in excess of the defendants' average processing times. Her case was then continued so that a search for her file could be conducted. The first request for the file was made in May of 1988. No further action was taken until January 23, 1989, when a request for expeditious handling was made. The application was approved on January 31, 1989.

5) Yvonee Levaillant applied for replacement of her alien registration card on March 29, 1988. Her application was apparently lost by the INS. On January 31, 1989, the INS arranged for the issuance of a letter so that plaintiff could reenter the United States.

6) Jose and Victor Pinzon applied for adjustment of status on August 5, 1987. They were interviewed on February 16, 1988. The cases were continued for investigation in the Philippines. No further action was taken until approximately one year later, in January 1989, when a telephone call was made to check on the status of the investigation. On January 30, 1989, the plaintiffs' applications were approved.

7) Cynthia Salvante was apparently approved for adjustment of status in 1982. Despite numerous requests and applications for issuance of a permanent residence card, she never received her permanent residence card. When a replacement form was filed on February 1, 1989, it was approved the same day.

8) Edita Yeo was approved as a permanent resident in August of 1981. Again, despite numerous requests and applications, she never received a permanent residence card. A permanent residence card was issued by defendants in October of 1988.

Numerous status inquiries were made to INS employees for all of the plaintiffs'

cases. Prior to filing this case, and in an attempt to resolve it without the need for litigation, the plaintiffs submitted a consolidated written inquiry to the INS. It was not until the complaint in this case and the plaintiffs' motion for summary judgment were filed that visible action was taken by the agency.

Based on this record, the Court is compelled to find that the agency's prelitigation position was unreasonable. The agency provides no factual or legal justification for why these cases took substantially longer to adjudicate than the agency's admitted average processing times. It is apparent that the plaintiffs' applications sat untouched for long periods of time. The defendants have also failed to show that special circumstances justified their failure to act.

The government points to its conciliatory litigation position as support for the argument that it has acted reasonably. Although this is a case in which settlement was not substantially delayed, this does not preclude the Court from finding that given the "totality of the circumstances" the defendants' position was unreasonable. *See Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir.1984) (holding that the government's overall position was not substantially justified even though its litigation posture was conciliatory).

An award of attorney's fees in this case is also supported by the underlying purpose of the EAJA: "to eliminate the economic deterrent faced by individuals who wish to vindicate their rights." *League of Women Voters*, 798 F.2d at 1259. The plaintiffs' cases were taken on a pro bono basis because they could not afford to fund the litigation. Reeves declaration, pg. 2. Plaintiffs assert that they employed all available means to resolve their claims administratively, however, the INS refused to take action until this suit was filed. Based on all of these circumstances, the Court finds that an award of attorney's fees is appropriate.

Plaintiffs are entitled to recover attorney's fees "reasonably expended" on their case. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. Plaintiffs' counsel asserts that eleven hours were spent on researching and drafting of the complaint, twenty hours for research and drafting of the summary judgment motion, and thirteen hours for preparation of the motion for attorney's fees. *See* Statement of fees and costs. Defendants dispute plaintiffs' calculation of fees and have provided the Court with copies of pleadings prepared by another attorney in an earlier case, *Hann, et al. v. Gustafson*, CV 87–6690 CBM. The Court has compared the pleadings in the *Hann* case with the papers filed by plaintiffs' herein, and finds that they are, in all important respects, identical.

Based on this finding, plaintiffs' counsel's assertion that it took him forty-four hours to prepare the complaint and motions is not credible. The Court finds that only three hours could reasonably have been expended in tailoring the complaint, summary judgment motion, and attorney's fees motion to the facts of this case. The Court finds that the other entries for hours spent are reasonable. Therefore, plaintiffs may recover for 39.75 hours.

As to the hourly rate, the EAJA provides that "attorney's fees shall not be awarded in excess of $75.00 per hour unless the court determines that an increase in the cost of living ... justifies a higher fee." 28 U.S.C. § 2412(d)(1)(C)(2)(A)(ii). Although plaintiffs claim that they are entitled to an hourly rate of $96.76, they have submitted no evidence to establish this increase in the cost of living.

Plaintiffs will have until May 12, 1989 to submit evidence documenting any increase in the cost of living. Defendants will have until May 16, 1989, to submit any opposition to this evidence. The Court will then issue an order setting the amount of attorney fees due to plaintiffs. This order will include an award of costs in the amount of $312.00.

Based on all of the above reasons, plaintiffs' motion for an award of attorney's fees and costs is hereby granted.

It is so ordered.