**Haruna DABONE, Plaintiff,**

v.

**Richard THORNBURGH and David Milholland, Defendants.**

**Civ. A. No. 89–6337.**

United States District Court, E.D. Pennsylvania.

March 19, 1990.

Lawrence Rudnick, Steel, Rubin & Rudnick, Philadelphia, Pa., for plaintiff.

Michael M. Baylson, U.S. Atty., James G. Sheehan, David F. McComb, Asst. U.S. Attys., Philadelphia, Pa. (Gerald S. Hurwitz, Executive Office for Immigration Review, Falls Church, Va., of counsel), for defendants.

## MEMORANDUM

CAHN, District Judge.

The plaintiff, a citizen of Ghana residing in the United States, was convicted of possession of marijuana with intent to distribute on June 11, 1980. He was then found excludable by an immigration judge under 8 U.S.C. § 1182(a)(23) and, on June 8, 1982, was ordered excluded and deported. His appeal to the Board of Immigration Appeals ("BIA") was dismissed on April 11, 1984. Dabone then moved to stay deportation and reopen exclusion proceedings. The stay motion was denied. While the motion to reopen was under consideration, Dabone petitioned for a writ of habeas corpus, a petition ultimately denied by the Court of Appeals. *Dabone v. Karn*, 763 F.2d 593 (3d Cir.1985). The BIA denied the motion to reopen on December 26, 1985.

Dabone filed another motion to reopen on January 19, 1988, arguing that, since his conviction for drug possession had been set aside, the exclusion proceedings should be reopened. The Immigration and Naturalization Service ("INS") did not oppose this motion. In spite of this lack of opposition, the BIA failed to act. Letters sent by Dabone's counsel to the BIA also did not induce action. Indeed, a May 25, 1989, letter from W. Wayne Stogner, Deputy Chief Attorney Examiner in the BIA, states that Dabone's case "is not among the older cases now being before the Board." After almost twenty months of inaction, Dabone sued Richard Thornburgh, the Attorney General, and David Milholland, the Chairperson of the BIA, moving for a writ of mandamus pursuant to 28 U.S.C. § 1361 or, in the alternative, an order directing agency action under 5 U.S.C. § 706(1), on September 1, 1989.[1] On October 5, 1989, the

---

1. This court's jurisdiction is bottomed on 8 U.S.C. § 1329, which gives the district courts jurisdiction to review INS actions taken up to final orders of deportation. *Acosta v. Gaffney,*

BIA granted the motion to reopen; the complaint seeking mandamus was hence voluntarily dismissed by the plaintiff. The plaintiff now applies for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"). This application is granted.

The EAJA provides that "a court *shall* award to a prevailing party other than the United States fees and other expenses … incurred by that party in any civil action … including proceedings for judicial review of agency action, brought by or against the United States … unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). This requires that this court begin by determining whether Dabone was the prevailing party in the mandamus action. If so, this court must examine the government's contentions that its actions were substantially justified within the terms of the EAJA. Finally, should the government's position not be substantially justified, this court must determine the proper fee.[2] These will be discussed in turn.

## I. Prevailing Party

■ Dabone argues that he is the prevailing party for the purposes of this action because he received the relief he requested shortly after he filed the suit. The government, in contrast, maintains that he did not prevail, both because he received no final judgment in his favor and because he has not shown that the mandamus action induced the BIA to reopen his case.[3]

This court must begin its analysis with the principles outlined in *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, — U.S. —, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). There the Court held that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties …" 109 S.Ct. at 1493. Thus, under 42 U.S.C. § 1988, the fee statute at issue, the Court required that, as a minimum, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." 109 S.Ct. at 1493. The Court has adopted this standard for the EAJA. *Sullivan v. Hudson*, — U.S. —, 109 S.Ct. 2248, 2255, 104 L.Ed.2d 941 (1989).

558 F.2d 1153, 1155 (3d Cir.1977); *Friedberger v. Schultz*, 616 F.Supp. 1315, 1317 (E.D.Pa.1985) (O'Neill, J.). In aid of this jurisdiction, this court may exercise its powers under the All Writs Act, 28 U.S.C. § 1651(a). Alternatively, it can issue a writ of mandamus under 28 U.S.C. § 1361.

Parenthetically, Dabone contends that he may also invoke 5 U.S.C. § 706(1) (§ 10(e) of the Administrative Procedure Act ("APA")) through the All Writs Act. However, a pair of 2–1 decisions of the Court of Appeals hold the APA inapplicable to BIA proceedings. *Cisternas–Estay v. INS*, 531 F.2d 155 (3d Cir.1976); *Giambanco v. INS*, 531 F.2d 141 (3d Cir.1976). In both, Judge Gibbons entered spirited dissents, criticizing the majority on its use of Supreme Court precedent, legislative history, and statutory interpretation. *Cisternas–Estay*, 531 F.2d at 160–66 (Gibbons, J., dissenting); *Giambanco*, 531 F.2d at 149–55 (Gibbons, J., dissenting). This court's own review of the relevant cases and materials lead it to side with Judge Gibbons. *See, e.g.*, 98 Cong.Rec. 5,778–79 (1952) (statement of Sen. McCarran) (during consideration of McCarran–Walters Bill; APA applies to BIA); 98 Cong.Rec. 5,625–26 (1952) (statement of Sen. McCarran) (same); 98 Cong.Rec. 4,302 (1952) (statement of Rep. Walters) (same); H.R. Conf.Rep. 2096, 82d Cong., 2d Sess., *reprinted in* 1952 U.S.Code Cong. & Admin.N. 1653, 1753, 1754 (procedures remain within APA framework); *see also* Note, *Administrative Procedure—Immigration—Inapplicability of the Administrative Procedure Act to Adjudications Before the Board of Immigration Appeals*, 8 Seton Hall L.Rev. 250 (1977) (criticizing majority in *Giambanco* and *Cisternas–Estay*). However, this court is obliged to follow Court of Appeals precedent and hold that the APA does not apply here. This does not affect the result, though, given the independent grounds for jurisdiction and substantive resolution.

2. The other statutory formalities—that the plaintiff must have a net worth under $2,000,000 and that the application must be filed within thirty days of the time of final judgment—have been met. 28 U.S.C. §§ 2412(d)(1)(B), 2412(d)(2)(B).

3. The government also argues that Dabone could not have prevailed had his suit continued to judgment, which would vitiate his claim that the suit produced the result he demanded. This argument is properly directed to whether the government's litigation position was substantially justified.

The resolution of the dispute mentioned above need not be judicial; rather, settlements, consent decrees, or changes in conduct that redress the grievances at issue are enough to allow a court to deem the plaintiff the prevailing party. *Hewitt v. Helms*, 482 U.S. 755, 760–61, 107 S.Ct. 2672, 2675–76, 96 L.Ed.2d 654 (1987); *Maher v. Gagne*, 448 U.S. 122, 129–30, 100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653 (1980); *see also* H.Rep. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4984, 4990 (EAJA; "the phrase 'prevailing party' should not be limited to a victor only after entry of a final judgment following a full trial on the merits"). However, merely interlocutory rulings that do not afford the relief requested do not make the party that benefits into the prevailing party until or unless that party actually receives some of the relief requested. *Hudson*, 109 S.Ct. at 2254–55; *Hewitt*, 482 U.S. at 760–63, 107 S.Ct. at 2675–77; *Hanrahan v. Hampton*, 446 U.S. 754, 758–59, 100 S.Ct. 1987, 1989–90, 64 L.Ed.2d 670 (1980); *Brown v. Secretary of Health and Human Servs.*, 747 F.2d 878, 883 (3d Cir.1984) (remand granted when relief sought was reversal of administrative ruling not adequate for prevailing party status).

Under these principles, Dabone has prevailed. He specifically sought to have this court compel the BIA to reopen his case, which it did within a month of the mandamus action. Unlike the plaintiffs in *Hanrahan* and *Brown*, Dabone did not request substantive relief and, receiving only procedural benefits, seek attorneys' fees for those. *See also Bernal–Garcia v. INS*, 852 F.2d 144, 147 (remand for reconsideration not enough for prevailing party status where plaintiff sought reversal of denial of request for asylum); *Escobar Ruiz v. INS*, 787 F.2d 1294, 1297–98 (9th Cir.1986) (same; deportation proceeding), *aff'd on reh'g en banc*, 838 F.2d 1020 (9th Cir.1988). While this relief is procedural and, in a sense, interlocutory, it is also exactly what he requested. *See Institutionalized Juveniles v. Secretary of Pub. Welfare*, 758

F.2d 897, 911 (3d Cir.1985) ("Usually a common-sense comparison between relief sought and relief obtained will be sufficient to indicate whether a party has prevailed."). Other courts that have faced a similar question—whether parties that succeed in having the INS process their petitions in a timely manner are prevailing parties—have held that the plaintiffs did prevail. *Abela v. Gustafson*, 888 F.2d 1258, 1266 (9th Cir.1989) (judgment granted for plaintiff); *Nadler v. INS*, No. 88–1586–OG (D.D.C. Dec. 6, 1989) (judgment granted for plaintiff); *Achaval–Bianco v. Gustafson*, 736 F.Supp. 214 (C.D.Cal.1989) (case settled); *Jefrey v. INS*, 710 F.Supp. 486, 488 (S.D.N.Y.1989) (case settled).[4]

The BIA insists that Dabone nevertheless cannot be considered a prevailing party because the BIA reopened Dabone's case before this court was able to rule on the matter; since the action for which Dabone seeks attorneys' fees was dismissed, it argues, Dabone could not have prevailed on it. This argument fails to take into account the line of cases cited above in which the Court held that relief need not be granted through judicial action, as well as the clear sense of the legislative history of the EAJA. Both *Jefrey* and *Achaval–Bianco* were resolved before judgment; in both, the courts had no difficulty finding the plaintiffs prevailing parties. *See also Jean v. Nelson*, 863 F.2d 759, 766 (11th Cir.1988) (EAJA recovery appropriate when case mooted because plaintiffs received the relief sought in immigration proceedings), *cert. granted,* —— U.S. ——, 110 S.Ct. 862, 107 L.Ed.2d 947 (1990).

The government also argues that Dabone has failed to establish that the relief he sought came as a result of his suit. If the BIA would have acted as it did when it did even in the absence of a lawsuit, says the government, the plaintiff may not recover. The evidence before this court does not support this contention. Dabone has supplied this court with evidence that shows that the BIA failed to act in the face of letters requesting action. This inaction

---

**4.** Indeed, the government *conceded* that the plaintiff was the prevailing party in *Nadler*.

continued for almost twenty months. Significantly, as noted above, the Deputy Chief Attorney Examiner stated on May 25, 1989—more than sixteen months after the second motion to reopen was filed—that the case "is not among the older cases now being before the Board." Plaintiff's Reply, Exh. B.

The government has produced no affidavits in rebuttal. Its statement in its brief that "[a] decision in this matter was being drafted prior to the initiation of the lawsuit" is not competent; though it is sworn under Fed.R.Civ.P. 11, it is not sworn to by anyone with direct knowledge of the BIA's activities. The Court of Appeals has made clear that assertions in briefs are not competent evidence unless agreed to by the adverse parties. *Braden v. University of Pittsburgh*, 477 F.2d 1, 6 (3d Cir.1973); *Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 688 (E.D.Pa.1986) (Lord, J.). Though the case may not be as clearcut as *Jean* or *Achaval–Bianco*, the uncontroverted evidence here shows that the suit was the catalyst that provoked the favorable ruling and thus that Dabone must prevail. *Jean*, 863 F.2d at 766; *Achaval–Bianco*, 736 F.Supp. at 215; *see also Abela*, 888 F.2d at 1266.[5]

Finally, the defendants argue that a writ of mandamus could not issue as a matter of law, and thus that the BIA's action following the filing of this suit could not have been caused by the suit. There are two major problems with this argument. First, this suit need not have proven successful for it to warrant prevailing party status for Dabone. The standards outlined in *Hudson, Texas State Teachers Ass'n*, and *Institutionalized Juveniles* stress the connection between results sought and results achieved; estimates of the eventual likelihood of success are hence properly subsumed under the substantial justification test. Here, one can easily infer from the evidence presented that, whatever the ultimate chance of success, filing this suit brought Dabone's case to the attention of those who were empowered to deal with it, thus prompting relatively speedy resolution (a familiar pattern to those who file motions to compel to break up discovery logjams). For the purposes of this prong, that is enough.

Second, the BIA is wrong as a matter of law when it asserts that no mandamus writ could ever issue against it. 28 U.S.C. § 1361 grants this court powers of mandamus, and the All Writs Act, 28 U.S.C. § 1651, allows this court to issue such writs as are necessary in aid of its jurisdiction. The government correctly observes that writs of mandamus are not to be granted lightly. *See, e.g., Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34, 101 S.Ct. 188, 189, 66 L.Ed.2d 193 (1980) (per curiam); *Hondros v. United States Civil Serv. Comm'n*, 720 F.2d 278, 297 (3d Cir. 1983). This is not to say, however, that they may not issue at all. The movant must demonstrate "that the government owes him the performance of a legal duty 'so plainly prescribed as to be free from doubt.'" *Naporano Metal and Iron Co. v. Secretary of Labor*, 529 F.2d 537, 542 (3d Cir.1976) (quoting *Richardson v. United States*, 465 F.2d 844, 849 (3d Cir.1972), *rev'd on other grounds*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974)). The right to the duty must be "'clear and indisputable.'" *Government of the Virgin Islands v. Douglas*, 812 F.2d 822, 832 (3d Cir.1987) (quoting *Kerr v. United States Dist. Ct.*, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976)). Whether the right is clear and indisputable need not be apparent on the face of the statute, however; if the statute as interpreted displays a firm obligation, mandamus is possible. *Douglas*, 812 F.2d at 832 n. 10. In addition, the petitioner must have no other adequate remedy. *Allied Chemical*, 449 U.S. at 35, 101 S.Ct. at 190; *Greater Los Angeles Council on Deafness, Inc. v. Baldrige*, 827 F.2d 1353, 1362 (9th Cir.1987).

---

5. The government's argument that *Jefrey* and *Achaval–Bianco* are distinguishable is inapposite. Whether INS activities are ministerial or discretionary is only relevant to whether the government was substantially justified in pursuing its position. These arguments will be discussed below.

The government challenges the availability of mandamus on the ground that the BIA has complete discretion over whether to reopen cases, and that mandamus may not issue when the official whose actions are in question has discretion over his conduct. This argument is doubly flawed. First, mandamus may, albeit rarely, issue over matters within the discretion of an official. As the Court of Appeals put it, "where there has been an action taken by a government official contrary to law and so plainly prohibited as to be free from doubt, it may be remedied by the issuance of a writ of mandamus." *Naporano*, 529 F.2d at 542. Second, and more important, the government confuses its discretion over *how* it resolves motions to reopen with its discretion over *whether* it resolves them. The former is not disputed. *See, e.g., Hibbert v. INS*, 554 F.2d 17, 21 (2d Cir.1977). However, as the Court has observed, mandamus "is employed to compel action, when refused, in matters involving judgment and discretion, but not to direct the exercise of judgment in a particular way nor to direct the retraction or reversal of action already taken in the exercise of either." *Wilbur v. United States ex rel. Kadrie*, 281 U.S. 206, 218, 50 S.Ct. 320, 324, 74 L.Ed. 809 (1930). Indeed, in a case not dissimilar to this, Judge Jerome Frank stated that "in appropriate circumstances, [courts] can compel correction of an abuse of discretion or can compel an official to exercise his discretion where he has obviously failed or refused to do so." *Mastrapasqua v. Shaughnessy*, 180 F.2d 999, 1002 (2d Cir.1950) (compelling INS and BIA to act upon petition for review of deportation proceeding).

The government's challenge thus fails if the Attorney General or the BIA, essentially his agent, must act upon petitions for review. The Immigration and Nationality Act of 1952, as amended, provides that:

[t]he Attorney General *shall* be charged with the administration and enforcement of this chapter ... He *shall* establish such regulations ... and perform such acts as he deems necessary for carrying out his authority ... [H]e may require or authorize any employee ... [of] the Department of Justice to perform or exercise any of the powers, privileges, or duties conferred or imposed by this chapter or regulations issued thereunder ...

8 U.S.C. § 1103(a) (emphasis added). The regulations establishing the BIA, in turn, provide that "[t]here *shall* be in the Department of Justice a Board of Immigration Appeals ... The Board *shall* exercise so much of the immigration and nationality laws as [the Director of the Executive Office for Immigration Review] may delegate to it." 8 C.F.R. § 3.1(a)(1) (emphasis added).[6] Moreover, the regulations require that BIA members "*shall* perform the quasi-judicial function of adjudicating cases coming before the Board." 8 C.F.R. § 3.1(a)(3) (emphasis added).[7] Among these cases are appeals from decisions of immigration judges in deportation cases. 8 C.F.R. § 3.1(b)(2).

The repeated use of "shall" in the statute and in the regulations reduces greatly the discretion of the BIA over whether it shall decide a case properly before it. In a similar case, the Court of Appeals held that mandamus could issue when the enabling statute stated that the Commonwealth official shall take such action as might be necessary; although one option would be to decide that *no* action would be necessary, the official was nevertheless granted no discretion over whether to make *any* decision. *Pennsylvania v. National Ass'n of Flood Insurers*, 520 F.2d 11, 26 (3d Cir. 1975). Similarly, here the BIA may not shirk a decision; the word "shall" is mandatory, not precatory. Though the substance of its decision is discretionary, Da-

---

**6.** The Director of the Executive Office for Immigration Review has authority delegated to him by the Attorney General. 8 C.F.R. § 3.0.

**7.** This passage also contradicts the defendants' assertion that the BIA is a judicial body. Were it so, mandamus could, as they observe, be granted only upon an abuse of discretion.

*Sporck v. Peil*, 759 F.2d 312 (3d Cir.1985). There is, however, a great gap between judicial and quasi-judicial bodies in the scope of discretion afforded them. As the BIA acts in an administrative orbit, it is more fully constrained than is a true court.

bone did not seek to compel a particular result. Like the petitioners in *Mastrapasqua* and *National Association of Flood Insurers,* he merely sought a decision. As such, this court has full powers to grant a writ of mandamus. The government's contention that no such powers exist is hence erroneous, and thus too is its contention that this suit could not have impelled BIA action.

In sum, none of the reasons advanced by the government for denying Dabone prevailing party status is valid. Dabone thus is a prevailing party for the purposes of this fee petition.

## II. Substantial Justification

■ The EAJA requires that a court deny attorneys' fees to a prevailing plaintiff if the government's position was substantially justified. 28 U.S.C. § 2412(d)(1)(A). As the legislative history puts it, "[t]his standard balances the constitutional obligation of the executive branch to see that the laws are faithfully executed against the public interest in encouraging parties to vindicate their rights." H.Rep. 1418, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4984, 4989. Accordingly, this court must look closely at the government's asserted litigation position to determine whether it falls within these constitutional and legal constraints.

The test this court must apply was set out in *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). There the Court interpreted "substantially" to mean "justified to a degree that could satisfy a reasonable person." 108 S.Ct. at 2550. As the Court observed, this is not functionally different from the test used by, among others, our Court of Appeals. 108 S.Ct. at 2550. That test requires that the government show a reasonable basis in truth for the facts alleged, a reasonable basis in law for the theory advanced, and a reasonable connection between the facts

and the legal theory. *Stokes v. Bowen,* 811 F.2d 814, 816 (3d Cir.1987); *Citizens Council v. Brinegar,* 741 F.2d 584, 593 (3d Cir. 1984) (cited in *Underwood*). These tests do not require that the government's position prevail or be likely to prevail. *Underwood,* 108 S.Ct. at 2550 n. 2. However, they "assuredly" exceed the Rule 11 standards for frivolousness. *Underwood,* 108 S.Ct. at 2550; *Stokes,* 811 F.2d at 815–16. This court must thus determine whether the government's positions before litigation and during litigation were substantially justified.[8] If either is not, then a fee award is appropriate.

I find that the government's pre-litigation position was not substantially justified.[9] The position, it will be remembered, is that a nineteen-month delay in processing an unopposed motion to reopen a deportation proceeding is reasonable. In support, the government offers no affidavits, no documents, and no correspondence—in short, no competent factual support whatever.[10] The government thus relies solely upon legal arguments (raised, this court observes, without recourse to statute or precedent) to justify its position. It argues that Dabone's case could safely be postponed because he was not significantly prejudiced by delay, that Dabone's case was actually complex and thus not to be dealt with rapidly, and that the BIA must have discretion to control its own docket. These arguments shall be addressed in turn.

The first argument is based on the government's assertion in its brief that Dabone is "not in custody and in no apparent danger of being immediately deported." Although this statement is somewhat reassuring, it does not counteract the significant difficulties under which Dabone necessarily labors. As an alien with an outstanding order of deportation, Dabone may be deported at the discretion of the Attorney General or the District Director of the

---

**8.** The government's position includes both actions and failure to act by the agency, as well as any litigation positions. 28 U.S.C. § 2412(d)(2)(D).

**9.** I thus need not decide whether its litigation position was substantially justified.

**10.** The assertions in the brief, as noted above, are not competent.

INS upon seventy-two hours notice. 8 U.S.C. § 1252(c); 8 C.F.R. §§ 237.1, 237.2; *see also Johns v. Department of Justice,* 653 F.2d 884, 890–91 (5th Cir.1981) (Rubin, J.) (procedure discretionary). Even if the statement made in the government's brief amounts to a tentative guarantee of Dabone's continued residency, it cannot be read retrospectively. For the full nineteen months during which the motion to reopen existed, Dabone could have received very short notice that he would have to depart.[11] It can, of course, be argued that Dabone would prefer to have the matter hang in the balance rather than to have it resolved against him. But his inability to make any long-term plans that would depend upon his location, whether in this nation or elsewhere, cannot be ignored.

Neither can the uncertainty regarding his employment status. Under the recent amendments to the immigration laws, it is illegal to employ an unauthorized alien or someone who becomes an unauthorized alien. 8 U.S.C. § 1324a(a)–(b). "Unauthorized alien" is defined as a person not at that time "lawfully admitted for permanent residence." 8 U.S.C. § 1324a(h)(3).[12] Dabone's uncertain status may thus prove highly prejudicial. If he does not now have whatever job he may have held on November 7, 1986, then it is likely that no employer could hire him legally; though no cases appear to have resolved the point, it would seem that an alien against whom an order of deportation has issued would no longer be lawfully admitted. Even if he has held a job since before that date, his employer would thus exercise monopoly power over him; after all, Dabone would then presumably be employable by no one else, and so his employer could exact punitive terms. *See* Note, *Compromising Immigration Reform: The Creation of a Vulnerable Subclass,* 98 Yale L.J. 409, 411–13 (1988). Both situations are potentially perilous.

This extended impairment of Dabone's ability to earn a livelihood, combined with the general danger of imminent deportation, may not equate with the hardships faced by aliens in detention, as the government argues. However, the difficulties faced by Dabone are significant enough to make a nineteen-month delay unreasonable, especially when the underlying motion is unopposed. Accordingly, I shall not accept the government's argument here.

The second argument is that Dabone's case was actually potentially difficult. This is impossible to evaluate, as the government did not provide evidence that the Order to Show Cause contained allegations extending outside the criminal conviction that was vacated here. In any event, the legal argument that the government states—that withdrawing a guilty plea in a criminal proceeding might not vacate the conviction—is unsupported and, in all likelihood, insupportable. The order of the court, attached to the plaintiff's reply as exhibit F, states that the guilty plea is withdrawn and a new trial granted. By its terms, the order vacates the conviction. There remain no areas for which there is evidence in the record that would warrant delay.[13] Since the government has not met its burden of placing into evidence facts that would support its argument, the government's position cannot be held to have been substantially justified.

The final argument is that the BIA must have control of its docket; by holding, in effect, that Dabone's case should be heard first, this court would thus disrupt the administrative process, perhaps bringing on violations of due process as other appellants are shoved to the back of the line. The defendants are correct when they assert that agencies ordinarily should be given substantial latitude over how they organize their work. *See, e.g., Natural Re-*

11. There is no stay of deportation as a matter of right during the pendency before the BIA of a motion to reopen. 8 C.F.R. § 3.6(b).

12. These rules do not apply to the continuing employment of an employee hired before November 7, 1986. 8 C.F.R. § 274a.7(a).

13. The government's argument that "an order had to be drafted and agreed upon by a majority of the members of the panel" also does not justify delay, in light of the fact that the order is merely a ready-made form with a few words crossed out and a few lines checked. Plaintiff's Reply, Exh. A.

sources *Defense Council v. SEC*, 606 F.2d 1031 (D.C.Cir.1979). However, they fail to set forth any evidence that would support a finding that this delay is within the bounds of reasonable agency control. The *Abela, Nadler, Achaval–Bianco*, and *Jefrey* decisions cited above suggest strongly that delays of this magnitude, particularly when they occur over uncomplicated matters of great importance to the individuals involved, may not be justified merely by assertions of overwork. This is especially so where, as here, the interests involved are personal, not economic. *See, e.g., Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 80 (D.C.Cir.1984) ("delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"). Had the defendants supported their assertions with evidence that, for example, there are so many unopposed cases that the BIA would have to delay other, perhaps more serious cases greatly were it to reorder its docket, this court might well hold that the government's position was substantially justified. With this record, however, this court cannot do so.

This court therefore aligns itself with the *Abela, Nadler, Achaval–Bianco* and *Jefrey* courts by holding that the government's pre-litigation position was not substantially justified. In so doing, I do not hold that delays of this magnitude are unjustifiable, or even that such delays for cases like Dabone's are necessarily unjustifiable. I hold only that the government failed to meet its burden of proving substantial justification.

### III.  Fee Calculation

█ In calculating the fee, this court must simply multiply the hourly rate, adjusted appropriately, by the number of hours expended—the lodestar technique familiar in § 1988 litigation. *Allen v. Bowen*, 821 F.2d 963 (3d Cir.1987); *see also, e.g., Ramon–Sepulveda v. INS*, 863 F.2d 1458, 1462–64 (9th Cir.1988). As required

by the statute, the hours claimed are itemized, here using copies of timesheets attached to both the application for attorneys' fees and the reply. 28 U.S.C. § 2412(d)(1)(B). The number of hours, 11.-35 by Mr. Rudnick and 8.6 by Ms. Ruben, is uncontested by the defendants and must thus be accepted by this court. *Bell v. United Princeton Properties*, 884 F.2d 713, 719 (3d Cir.1989).

However, that does not end the consideration under the EAJA. The Court of Appeals has held that, while the fee petition itself is compensable under normal standards, any filings after a government challenge must be evaluated in light of the "substantially justified" standard—that is, whether the government's opposition to a fee petition was substantially justified. *Lee v. Johnson*, 799 F.2d 31, 39–40 (3d Cir.1986). I must thus pursue this point if Mr. Rudnick and Ms. Ruben are to be compensated for the time spent on the reply to the government's response.

The government contended that Dabone was not a prevailing party and that the government's position was substantially justified. As is shown above, neither argument succeeded. That is not enough, though; as the Court of Appeals observes, "a court might conclude that, while the government's underlying position was not substantially justified, its opposition to a fee petition is substantially justified." *Lee*, 799 F.2d at 40. The response, however, argues no close points of law or fact.[14] Although the precise issue at hand is novel, all other courts that have considered similar issues have decided them as this court has here. Moreover, in doing so this court has not had to stray outside the cases of the courts above. If the government had pointed out contrary lines of argument, supported by precedent, or if it had laid out policy arguments supported by competent evidence, this issue might be closer. Under the circumstances, this court cannot say that the government bore the burden of substantially justifying its position. The

---

**14.** It may be observed that the government presented no competent factual support for its opposition and cited only one (unhelpful) case.

The substantiality of its opposition is thus facially questionable.

hours spent on the reply to the government's response are thus allowed.

The other component of the lodestar, the hourly rate, is likewise uncontested, but it may bear brief discussion in light of the calculations that undergird it. The statute states that "[t]he amount of fees ... shall be based upon prevailing market rates for the kind and quality of services furnished, except that ... attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor ... justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The plaintiff has supplied the court with an affidavit, uncontradicted by the government, that Ms. Ruben's normal billing rate for the period in question was $125 per hour and that Mr. Rudnick's was $175 per hour. These rates are amply warranted by the quality of the work. Therefore, this court shall set the base rate due the plaintiff's lawyers at $75 per hour.

The plaintiff's counsel make no application for a special factor. They do, however, request a cost of living adjustment. The Court of Appeals favors such adjustments. *See, e.g., Allen,* 821 F.2d at 967; *Natural Resources Defense Council v. EPA,* 703 F.2d 700, 713 (3d Cir.1983); *see also* H.Rep. 1418, 96th Cong., 2d Sess. 14–15, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4984, 4993–94 (EAJA legislative history). The multiplier is determined by dividing the Consumer Price Index (figure for all urban consumers, all items, based on 1967 = 100) for the most recent month for which the Bureau of Labor Statistics has calculated it by the value in the month in which the EAJA was first enacted. *Ramon–Sepulveda,* 863 F.2d at 1463 & n. 4 (formula); *Allen,* 821 F.2d at 967 (use date of first enactment). The denominator, the value for October of 1981, is 279.9. The numerator, the value for January of 1990, is 381.5. Multiplying this fraction by $75 yields an adjusted hourly rate of $102.22. When $102.22 per hour is multiplied by the 19.95 hours logged by plaintiff's counsel, the calculated fee is $2,039.29. The court finds that this is an appropriate fee award for plaintiff's counsel.[15]

---

**15.** The plaintiff also seeks costs. He should file a request for these with the Clerk of the Court.